Lawrence C. GRAY, Plaintiff,

v.

CITY OF KANSAS CITY, KANSAS, and Chief Allan P. Meyers, Defendants.

Civ. A. No. 84–2123.

United States District Court, D. Kansas.

Feb. 19, 1985.

David J. Waxse of the firm of Shook, Hardy & Bacon, Overland Park, Kan., for plaintiff.

Daniel B. Denk, James R. Goheen, of the firm of McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendants City and Meyers.

William S. Robbins, Jr., Steve A.J. Bukaty, of the firm of Blake & Uhlig, P.A., Kansas City, Kan., for non-party defendant F.O.P.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

With this Memorandum and Order we return to the issue first raised by defendants City of Kansas City, Kansas, and Chief Allan P. Meyers (the named defendants) in their August 15, 1984, "Motion to Allow Filing of Third Party Complaint or Joinder." By that motion, the named defendants sought the joinder of Fraternal Order of Police, Lodge No. 4 (F.O.P.) as either a third-party defendant (under Fed. R.Civ.P. 14(a)) or as a primary party defendant (under Fed.R.Civ.P. 19(a)). If Rule 19 joinder were allowed, the named defendants sought to file a cross-claim against F.O.P.

On September 6, 1984, we ordered the joinder of F.O.P. as a third-party defendant. (Docket No. 22) Upon reconsideration, however, we modified that order to provide for the joinder of F.O.P. as a primary party defendant. Order of October 12, 1984. (Docket No. 25) In accordance with our October 12th order, the named defendants filed and served their cross-claim on F.O.P. We considered F.O.P.'s motion to dismiss that cross-claim in our order of December 20, 1984. (Docket No. 42) We concluded therein that, as to plaintiff's Title VII claim, F.O.P. was not subject to joinder as either a third-party or primary party defendant. Our conclusion was based on the holding in *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), that an employer has no statutory or common law right to contribution from unions bearing partial responsibility for violation of an employee's Title VII rights. We also asked the parties to brief the issue

of whether such a contribution remedy was available as to plaintiff's 42 U.S.C. §§ 1981 & 1983 claims. Both F.O.P. and the named defendants have submitted memoranda on this issue, and we are now prepared to rule on F.O.P.'s motion to dismiss the cross-claim.

Our analysis of this issue must obviously begin with the Court's opinion in *Northwest Airlines*. In holding that an employer has no right to contribution from a union in these circumstances under either Title VII or the Equal Pay Act, the Court noted that such a right

> may have been created in either of two ways. First, it may have been created by statute when Congress enacted the Equal Pay Act or Title VII. Even though Congress did not expressly create a contribution remedy, if its intent to do so may fairly be inferred from either or both statutes, an implied cause of action for contribution could be recognized on the basis of the analysis used in cases such as *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26, *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560, and *Universities Research Assn., Inc. v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662. Second, a cause of action for contribution may have become a part of the federal common law through the exercise of judicial power to fashion appropriate remedies for unlawful conduct.

451 U.S. at 90, 101 S.Ct. at 1580. The Court, of course, went on to reject both theories. This *Northwest Airlines* analysis was applied to section 1981 in *Anderson v. Local 3, I.B.E.W.*, 582 F.Supp. 627, 630–32 (S.D.N.Y.1984). The *Anderson* court held that contribution was not an available remedy under section 1981. We agree with the analysis of that court and find it equally applicable to section 1983.

■ Neither statute makes express provision for a contribution remedy. A major factor in determining whether a statute creates an *implied* cause of action is whether that statute was enacted for the special benefit of a class which includes the party seeking to bring such an action. *Northwest Airlines*, 451 U.S. at 91–92, 101 S.Ct. at 1580–81. In this case, it cannot possibly be said that these defendants are members of the class for whose special benefit either section 1981 or 1983 was enacted. To the contrary, both statutes are expressly directed against anyone (such as these defendants) accused of the acts alleged in plaintiff's complaint. Although these statutes are less comprehensive than either Title VII or the Equal Pay Act (a factor cited in *Northwest Airlines* as tending to negate any implied contribution remedy under those statutes), we attach little weight to this distinction. The federal antitrust laws are at least as skeletal as these civil rights statutes, and yet they have been held to create no implied cause of action for contribution. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). Finally, no party has cited any legislative history which would suggest a congressional intent to create a contribution remedy under either of these statutes. Accordingly, we hold that there is no implied right to contribution under 42 U.S.C. §§ 1981 or 1983.

■ We must thus examine the second theory suggested in *Northwest Airlines*. That is, is there a federal common law right to contribution under either of these statutes? We begin this inquiry with the proposition that "[a]t common law there was no right to contribution among joint tortfeasors." *Northwest Airlines*, 451 U.S. at 86, 101 S.Ct. at 1577–78. Moreover,

> absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases.

*Texas Industries*, 451 U.S. at 641, 101 S.Ct. at 2067. The Supreme Court found that none of these "narrow areas" provided authority for it to create a federal common

law right to contribution under either Title VII or the Equal Pay Act. *Northwest Airlines*, 451 U.S. at 98, 101 S.Ct. at 1584. That analysis seems equally applicable to 42 U.S.C. §§ 1981 & 1983.

■ The named defendants cite the Third Circuit's decision in *Miller v. Apartments & Homes of New Jersey, Inc.*, 646 F.2d 101 (3d Cir.1981), for the proposition that there is a federal common law right to contribution in federal civil rights suits. Though that case does appear to stand for that proposition, we must disregard it entirely. *Miller* was decided prior to the Supreme Court's decisions in *Northwest Airlines* and *Texas Industries*. Those subsequent decisions have entirely undermined the *Miller* analysis. For instance, the *Miller* court based its decision, in part, on its own holding in *Glus v. G.C. Murphy Co.*, 629 F.2d 248 (3d Cir.1980). *Glus* held that federal common law does provide a contribution remedy under Title VII. The *Miller* court went on to say that "[n]othing in this case suggests that a different analysis or a different result should follow in civil rights cases." 646 F.2d at 107. Given this latter statement, and the subsequent holding in *Northwest Airlines*, the Third Circuit would apparently now agree with us that federal common law does *not* provide a contribution remedy in civil rights cases. Moreover, the *Miller* court cited the Fifth Circuit's decision in *Texas Industries* for the proposition that federal courts have fashioned common law contribution principles in anti-trust cases. Although the Fifth Circuit's *result* was affirmed by the Supreme Court in *Texas Industries*, its analysis on this point was rejected. Because these subsequent decisions have rendered the *Miller* court's decision fatally defective, we must ignore that court's holding. Accordingly, the named defendants have no federal common law right to seek contribution from F.O.P. on plaintiff's 1981 or 1983 claims.

Because sections 1981 and 1983 were enacted in the immediate post-Civil War era, we must consider a statute that was not relevant in either *Northwest Airlines* or *Texas Industries*. 42 U.S.C. § 1988 provides, in pertinent part, that

the jurisdiction in civil and criminal matters conferred on the district courts by the provisions of [various post-Civil War statutes, including the present 42 U.S.C. §§ 1981 & 1983], for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, *the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held,* so far as the same is not inconsistent with the Constitution and laws of the United States, *shall be extended to and govern the said courts in the trial and disposition of the cause.*

(Emphasis added.) Arguably, then, we may also examine the law of Kansas to determine whether the named defendants have a right to seek contribution from F.O.P. on the plaintiff's section 1981 and 1983 claims. *See Sager v. City of Woodland Park*, 543 F.Supp. 282, 297 n. 19 (D.Colo.1982) (applying Colorado statutory and common law contribution remedies in section 1983 action); *but cf. Moor v. Alameda County, Calif.*, 411 U.S. 693, 703–04, 93 S.Ct. 1785, 1792–93, 36 L.Ed.2d 596 (1973) ("But we do not believe that the section, without more, was meant to authorize the wholesale importation into federal law of state causes of action.").

■ It is clear from the complaint in this case that plaintiff is alleging an intentional tort. Indeed, an employment discrimination action could not be maintained under either of these statutes unless the allegedly wrongful conduct were intentional. *General Building Contractor Ass'n v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (section 1981); *Smith v. District of Columbia*, 29 FEP

Cases 1129, 1132 (D.D.C.1982) (section 1983). Under Kansas law, a distinction is drawn between intentional and negligent torts. Negligent torts are subject to the Kansas comparative fault statute, K.S.A. 60–258(a); but that statute "has done nothing to change the common-law rule of joint and several liability for defendants in intentional tort actions." *Sieben v. Sieben*, 231 Kan. 372, 378, 646 P.2d 1036, 1041 (1982). At common law, "there is no right of contribution in favor of any tortfeasor who has intentionally caused the harm." *Restatement (Second) Torts*, § 886A(3). *See also* Prosser, *Handbook of the Law of Torts* § 50 (4th ed. 1971) ("there is no contribution in favor of those who commit intentional torts").

▬▬▬ The named defendants' reliance on K.S.A. 60–2413(b) is misplaced. That "limited statutory exception" to "the common law rule of no contribution between joint tortfeasors," *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, 185, 643 P.2d 158, 162 (1982), provides that:

> (b) *Judgment debtors.* A right of contribution or indemnity among judgment debtors, arising out of the payment of the judgment by one or more of them, may be enforced by execution against the property of the judgment debtor from whom contribution or indemnity is sought.

Prior to enactment of the comparative fault statute, the quoted provision was held to permit contribution among joint tortfeasors. *See McKinney v. Miller*, 204 Kan. 436, 440, 464 P.2d 276, 280 (1970). However, the comparative fault statute has made contribution among non-intentional tortfeasors "no longer necessary." *Kennedy v. City of Sawyer*, 228 Kan. 439, 454, 618 P.2d 788, 799 (1980); and K.S.A. 60–2413(b) has never been applied to intentional tortfeasors. If the issue were before them, we believe the Kansas courts would hold that the legislature did not intend by this provision to modify the common law rule against contribution among intentional joint tortfeasors. In any event, the statute applies only where "the party against whom the right to contribution is sought to be enforced was initially sued by the injured part[y] and became a judgment debtor of [that party]." *McKinney*, 204 Kan. at 438, 464 P.2d at 278. Because no judgment has yet been obtained in this case, any contribution action would now be premature.

Therefore, even if Kansas law were applicable to this contribution issue, the named defendants could not seek contribution from F.O.P. It then follows that 42 U.S.C. § 1988 would not stay our hand in dismissing this cross-claim.

The named defendants have cited numerous other authorities in opposing this motion to dismiss the cross-claim. We have considered those authorities and have found them to be either irrelevant or incorrect. We agree, for instance, that F.O.P. would be subject to suit by the plaintiff under either of these two statutes. Such an option, however, is irrelevant to the question of contribution. Defendants also cite numerous cases for the proposition that "in situations where potentially liable unions have not been sued, the courts have generally been quite amenable to various devices by which defendant employers bring such unions before the court." All these cases, however, were decided *prior* to the Supreme Court's decision in *Northwest Airlines*. To the extent they would permit contribution in the situation now before us, such cases are incorrect statements of the law.

As noted above, the named defendants' original motion was in the alternative—relying on either Fed.R.Civ.P. 14 or 19. Whether obtained by way of a third-party suit or by a cross-claim against a primary party defendant, any money the named defendants might receive from F.O.P. would be "contribution." Our holding today is thus applicable to either Rule.

IT IS THEREFORE ORDERED that the motion of Fraternal Order of Police, Lodge No. 4, to dismiss the cross-claim filed against it by defendants City of Kansas City, Kansas, and Chief Allan P. Meyers is granted.