**Billy Wayne WRIGHT**

v.

**B.J. REYNOLDS, et al.**

**Civ. A. No. 4–87–305–E.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Aug. 18, 1988.

Don Gladden, Fort Worth, Tex., for plaintiff.

B. Thomas McElroy, Ronald W. Johnson, Thomas W. Welch, Touchstone, Bernays, Johnston, Beale & Smith, Dallas, Tex., Roy T. Sparkman, Sherrill & Pace, Wichita Falls, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

Now before the Court are the motions for summary judgment of the Defendants to which responses have been filed. After a thorough review of the motions and the

applicable law, the Court makes the following determination.

## FACTS

On November 24, 1985, a Municipal Judge in the City of Runaway Bay issued four warrants for the arrest of Plaintiff Billy Wayne Wright for Class "C" misdemeanor offenses. Wright failed to pay three traffic citations or to appear in Court to defend his nonpayment. Because Wright failed to pay or to appear in court, four warrants were issued—one warrant for each of the traffic citations and one warrant because Wright failed to appear in court. The Runaway Bay Municipal Judge also set bond on each of the charges and set a court date for December 15, 1986.

The warrants instructed the marshal of Runaway Bay to arrest Billy Wayne Wright and bring him "instanter" (immediately) before the municipal judge in Runaway Bay. Wright's name was placed into a regional computer system for outstanding warrants.

On December 8, 1986, a police officer for the City of Irving stopped Wright in his car. The Irving officer ran a computer check on Wright and discovered the warrants which had been issued for Wright's arrest. The officer arrested Wright and brought him to the Irving jail. At approximately 8:00 a.m. the next day, the Irving Municipal Court Judge arraigned Wright. The Irving Judge informed Wright of the reason for his arrest and of the bond for each of the charges against him. After the arraignment, Wright was returned to the Irving jail to await the arrival of the police officers from Runaway Bay.

Later on December 9, 1986, B.J. Reynolds, Chief of Police of Runaway Bay transported Wright from the Irving jail to the City of Bridgeport's jail. Runaway Bay and Bridgeport have an agreement whereby Runaway Bay prisoners are housed in the Bridgeport jail. Leonard Denny is the Chief of Police for the City of Bridgeport.

Wright remained in the custody of the City of Bridgeport for seven days without being brought before the Municipal Judge of Runaway Bay. On December 15, 1986, the police of Runaway Bay tried to transfer Wright to another facility however no other facility would accept him. Consequently, Wright finally was released on a personal recognizance bond issued by the Runaway Bay police. Wright was never taken before a judge or magistrate of Runaway Bay. The decision to release Wright on a personal recognizance bond apparently was made by the Runaway Bay police![1] Wright was indigent at all times relevant to this lawsuit and was not able to make the required bond or bail.

Chief Denny of the City of Bridgeport did not see a copy of the warrant which required Wright to be brought before the Municipal Judge of Runaway Bay. In addition, Chief Denny was under the impression that Wright was brought before the Municipal Judge of Runaway Bay because of oral conversations which he had with a Runaway Bay officer.

## DISCUSSION

Plaintiff brought suit against state officials and two cities under section 1983 of Title 42 of the United States Code. Plaintiff has also brought a state law claim for false imprisonment against the state officials. Since the Court is now ruling on the motions for summary judgment of Defendants, the Court must consider whether Plaintiff has made out a cause of action based upon the facts taken most favorable to Plaintiff.

## FALSE IMPRISONMENT

■ The Court finds that the evidence, taken in a light most favorable to the Plaintiff, supports a claim for false imprisonment under state law. The essential elements of a cause of action for false imprisonment are willful detention, lack of consent and an absence of authority of law. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374 (Tex.1985).

1. The Texas Code of Criminal Procedure only allows a *court or magistrate* to release an individual on a personal recognizance bond. *Tex. Code of Crim.Pro.,* Art. 17.03 & 17.031.

## SECTION 1983

Section 1983 provides a method of redress for violations of the Federal Constitution and of Federal Laws. 42 U.S.C. § 1983; *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2625–2626, 69 L.Ed.2d 435 (1981); *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Plaintiff's suit against the Defendants alleges violations of the Federal Constitution and of State law. Plaintiff does not allege any violation of Federal Law. The violations of state law are not relevant to the claim under section 1983.

The first inquiry under a section 1983 suit is whether Plaintiff has been deprived of a right "secured by the Constitution and laws." Only after it is determined that Plaintiff is deprived of such a right does the Court consider whether Defendants are protected by absolute or qualified immunity.

### I. Due Process Violations

Plaintiff contends that his rights under the Due Process Clause of the Fourteenth Amendment to the Constitution were violated. Specifically, Plaintiff alleges that the Defendants violated his Fourteenth Amendment protection against deprivations of liberty without due process of law.

The Courts have looked to the Bill of Rights to define the "liberty" protected by the Due Process Clause of the Fourteenth Amendment. Some of the provisions of the Bill of Rights that have been incorporated into the Due Process Clause include the right to be free from unreasonable seizures, the right to bail and the right to a speedy trial. *See Baker v. McCollan*, 443 U.S. 137, 147, 99 S.Ct. 2689, 2696, 61 L.Ed. 2d 433 (1979) (Blackman, J., concurring).

The Courts have also looked outside of the Bill of Rights for guidance in defining liberty. For instance, due process is denied if government action "shocks the conscience" or is otherwise offensive to the "concept of ordered liberty." *Id.*

Plaintiff in this case suggests that the restraint of Plaintiff so "shocks the con-science" that Plaintiff's due process rights were violated. More specifically, Plaintiff claims that confining him in jail for seven days without taking him before the Runaway Bay Municipal Judge when he was only charged with non-jailable offenses and when the warrant directs the police officer to bring Wright before the issuing judge "instanter" so shocks the conscience that Plaintiff's due process rights are violated.

This Court finds that Plaintiff alleges both a procedural and substantive due process claim. In order for either claim to succeed, Plaintiff must demonstrate that he was deprived of a liberty interest recognized under the Constitution. One of the liberty interests well recognized under the Constitution is the right to be free from bodily restraint caused by arbitrary governmental action. *Youngberg v. Romeo*, 457 U.S. 307, 316, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1981) (citing *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 18, 99 S.Ct. 2100, 60 L.Ed.2d 668 (Powell, J., concurring)). The procedural due process claim is that he was restrained in jail without being brought before a judge or magistrate to determine whether his detention was lawful. The substantive due process claim is that his detention so shocks the conscience that his due process rights were violated.

■ Although not argued by the Defendants, the Court finds that it cannot consider Plaintiff's Fourteenth Amendment procedural due process claim. "[N]o constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct by public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy...." *Martin v. Dallas County, Tex.*, 822 F.2d 553 (5th Cir.1987). "Where a state system *as a whole* provides due process of law, federal constitutional guarantees are not breached merely because some state employee ... might engage in tortious conduct...." *Holloway v. Walker*, 790 F.2d

1170, 1174 (5th Cir.1986).[2]

The above decisions require courts to consider the adequacy and availability of the remedies under state law before concluding that the deprivation of life, liberty or property violates due process. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 871 (7th Cir.1983).

The complaint clearly indicates that Plaintiff is asserting a false imprisonment claim under state law for the same conduct that he is attempting to bring a claim under the Due Process Clause of the Fourteenth Amendment. This Court finds that the state law claim can adequately redress the alleged wrong. Therefore, there is no procedural violation of the Due Process Clause because state law provides an adequate post-deprivation remedy.

■ As to Plaintiff's substantive due process claim, the Court finds that, based on the evidence most favorable to the Plaintiff, a jury could find that the actions of Chief Reynolds so shock the conscience that it amounts to a violation of Plaintiff's substantive due process rights.

■ However, as a matter of law, the Court finds that Chief Denny of the City of Bridgeport did not violate Plaintiff's substantive Due Process rights. The language of section 1983 requires a degree of causation as an element of individual liability.[3] *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976). The cause of Wright being detained and not being brought before the Runaway Bay Municipal Judge was not Chief Denny. Chief Denny did not put Wright in jail. Chief Denny only had custody of Wright pursuant to an agreement whereby the City of Bridgeport held prisoners for the City of Runaway Bay. Chief Denny had no knowledge of the warrant

which required that Plaintiff be brought before the Municipal Judge for the City of Runaway Bay instanter. In addition, Chief Denny thought that Plaintiff had been brought before the Municipal Judge for Runaway Bay. Chief Denny was solely responsible for providing a safe and secure place of confinement for Wright.

## II. Equal Protection Violations

■ Plaintiff alleges that his rights under the equal protection clause of the Fourteenth Amendment to the Constitution were violated because Plaintiff was indigent and unable to post the bail on the non-jailable offenses with which he was charged. Plaintiff has filed an affidavit indicating that he is indigent. There is no evidence to contradict Plaintiff's affidavit. Such a claim is cognizable under the Fourteenth Amendment. *Allen v. Burke*, CA No. 81–040 (E.D.Va.1981). However, under the facts of this case, Plaintiff cannot sue the employees of the Bridgeport and Runaway Bay who detained Plaintiff. These individuals did not set the bail or bond. Therefore, Defendants' motion for summary judgment is granted as to Plaintiff's claims under the Equal Protection Clause of the Fourteenth Amendment.

## III. Right to Be Free from Unreasonable Seizure

■ The Fourth Amendment protects individuals from unreasonable seizures. States are required to uphold this protection, which is part of the Bill of Rights, because of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Court finds that the evidence taken most favorably to the Plaintiff indicates that his Fourth

---

**2.** "To satisfy the Fourteenth Amendment, all the state has to do in response to a wrongful deprivation of property occasioned by the random and unauthorized intentional act of a public official is to provide an adequate postdeprivation remedy." *Slaughter v. Anderson*, 673 F.Supp. 929, 930 (N.D.Ill.1987).

**3.** Section 1983 reads:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, *or causes to be subject,* any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
(Emphasis added).

Amendment rights were violated by Chief Reynolds.

## IV. Claims Against Reynolds and Denny as Supervisory Employees

■ A supervisory employee, such as a police chief can only be liable under section 1983 in two ways. First, the police chief may be liable if he is personally involved in the action which deprives Plaintiff of his constitutional rights. This Court has discussed the direct involvement of Police Chiefs Reynolds and Denny in the preceding section. Second, he may be liable if there is direct causal connection between his actions and the constitutional deprivation. *See Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir.1986); *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir.1986) (quoting *Duncan v. Barnes*, 592 F.2d 1336, 1338 (5th Cir.1979)). With regard to this second method, the Plaintiff can assert a claim by alleging that "(1) the police chief failed to supervise or train the officer [who committed the wrong], (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference." *Hinshaw*, 785 F.2d at 1263. *In addition*, the Plaintiff must allege with sufficient particularity the factual basis to support his contention. The police chief cannot be liable simply because his subordinates committed a constitutional tort. *Id.*

There is no evidence that Chief Denny or anyone associated with the City of Bridgeport caused Plaintiff's constitutional rights to be violated. Therefore, Chief Denny cannot be liable as a supervisory employee.

Plaintiff has sufficiently pled the elements required to bring a claim against B.J. Reynolds in his supervisory capacity. Reynolds does not contest this portion of the complaint on summary judgment.

## V. Qualified Immunity

■ Defendant Reynolds alleges that has qualified immunity from suit. Once the claim of qualified immunity is raised, the Defendant has the burden of proving that a reasonably well trained police officer would not have known that his actions violated Plaintiff's constitutional rights. *Saldana v. Garza*, 684 F.2d 1159, 1162–64 (5th Cir.1982). These constitutional rights must have been clearly established at the time of the violation. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3038–39, 97 L.Ed. 2d 523 (1987). If the Defendant presents evidence which supports his claim of qualified immunity, then the Plaintiff has the burden of presenting evidence which contradicts the factual basis for qualified immunity contained in Defendant's evidence. *Saldana*, 684 F.2d at 1163.

■ Case law has clearly established that police officers may not detain an individual without justification. For instance, a police officer can detain a person if there is a warrant authorizing such detention. However, the detention can only be as prescribed by the warrant. In addition, an officer can detain a person for varied lengths of time based upon "reasonable suspicion" or "probable cause" that the individual detained has committed a crime. However, under no circumstances may the police detain a person longer than necessary to go through the administrative process of putting someone in jail and bringing him before a magistrate or judge, unless there is judicial authority for such detention. *McGaughey v. City of Chicago*, 664 F.Supp. 1131, 1141 (N.D.Ill.1987). *See also Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (once a person is in custody, that person's "need for a neutral determination of probable cause increases significantly").

In this case, there was a warrant for Plaintiff's arrest. Plaintiff was arrested and placed in the Irving jail. He was brought before the Irving Municipal Judge and informed of the reason for his detention—the warrants. Plaintiff does not object to this detention since the police can detain a person for a reasonable time to go through the administrative process of placing a person in jail and bringing the person before a judge or magistrate. *Id.*

Plaintiff does object to the lengthy detention after he left the custody of the Irving

jail. As stated above, it is well known to a reasonably well trained police officer that he must have a justification for detaining an individual. In this case, it is undisputed that the warrants only permitted a detention of Plaintiff for so long as it took to bring the Plaintiff before the Runaway Bay Municipal Judge "instanter" (immediately). The warrants did not justify a seven day detention of Plaintiff. The police officers in this case ignored the warrant and detained Plaintiff for seven days, never bringing Plaintiff before the Municipal Judge.

The Court finds that a reasonably prudent police officer in B.J. Reynolds' position would have known that it is unconstitutional to place Plaintiff in the City of Bridgeport jail and not bring him before the magistrate as directed by the warrant.[4]

In sum, the Court finds that the B.J. Reynolds does not have a defense of qualified immunity based upon the undisputed facts and the disputed facts favoring the Plaintiff.

## VI. Claims Against the Cities

■ In order for the Cities of Bridgeport and Runaway Bay to be liable, Plaintiff must identify "(1) a policy (2) of the city's policymaker (3) that caused (4) the plaintiff to be subjected to a deprivation of a constitutional right." *Grandstaff v. City of Borger, Texas,* 767 F.2d 161, 169 (5th Cir.1985) (*cited in Palmer v. City of San Antonio, Texas,* 810 F.2d 514, 516 (5th Cir.1987). The Fifth Circuit defined "a policy" in *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984) (en banc).

As to the City of Bridgeport, there is evidence that the City of Bridgeport had a policy of detaining prisoners put in the City of Bridgeport jail by City of Runaway Bay officers. The evidence taken most favorable to Plaintiff indicates that Plaintiff's constitutional rights may have been violated. However, the City of Bridgeport policy of detaining individuals placed in their jail by City of Runaway Bay officers did not "cause" Plaintiff to be deprived of his constitutional rights. There is no direct causal link between the policy and the deprivation.

The cause of Plaintiff being placed in jail and not brought before a judge was the City of Runaway Bay officers who put Plaintiff in jail and did not bring him before a judge. Therefore, the Court finds that the City of Bridgeport is not liable to Wright.

■ The City of Runaway Bay contends that Plaintiff has not properly asserted a policy which deprived Plaintiff of his constitutional rights. To the contrary, this Court finds that Plaintiff's assertions of a policy would allow him to recover under section 1983 if such were the cause of his constitutional rights being deprived. Plaintiff asserts that the City of Runaway Bay had a policy of not taking prisoners before the proper court and that the City, pursuant to the usual policies and procedures of its police department, failed to properly train its officers to assure that prisoners were taken before the proper court. Runaway Bay also asserts that it cannot be liable under § 1983 on the theory of respondeat superior. Neither the Court nor the Plaintiff disagree. However, Plaintiff is not suing Runaway Bay on the theory of respondeat superior. In addition, Runaway Bay argues that it is immune from suit under state law. Once again, neither the Court nor the Plaintiff disagree. However, Plaintiff is only suing Runaway Bay under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipal government can be liable under § 1983).

---

**4.** Police Chief Reynolds alleges that he brought Wright before the Runaway Bay Municipal Judge and that the Municipal Judge orally ordered Wright to be confined until such time as he pays off his fine. Wright, in his deposition and his affidavit, contends that he was never brought before the Runaway Bay Municipal Judge and that there was no order, oral or written, which required him to be confined. This factual dispute is essential to the qualified immunity decision and cannot be resolved until the time of trial. Case law requires the Court to assume that the facts are as Wright, in his deposition and his affidavit, alleges in resolving the issue of qualified immunity at this stage.

VII. City of Bridgeport and Denny's Claim for Contribution and Indemnification

The City of Bridgeport and its Police Chief, Leonard Denny, brought claims against the City of Runaway Bay for contribution and indemnification. The City of Runaway Bay contends that claims for contribution and indemnification are not permitted under section 1983. This is an issue on which few courts have spoken and on which there is little agreement. *See e.g. Miller v. Apts. & Homes of New Jersey, Inc.*, 646 F.2d 101, 106 (3d Cir.1981). In addition, recent Supreme Court cases have called into question any previously issued decision. *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (no action for contribution under antitrust laws); *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (no action for contribution under Equal Pay Act or Title VII). The Courts that have addressed the issue since *Northwest Airlines* and *Texas Industries* are in conflict. *Holman v. Walls*, 648 F.Supp. 947, 952 n. 5 (D.Del.1986); *Gray v. City of Kansas City, Kan.*, 603 F.Supp. 872, 874–76 (D.Kan.1985); *Fishman v. DeMeo*, 604 F.Supp. 873, 875–77 (E.D.Pa.1985).

Prior to the Supreme Court's decisions in *Northwest Airlines* and *Texas Industries,* courts generally allowed a claim for contribution in civil rights action. *Miller*, 646 F.2d at 106. However, the Supreme Court's decisions necessitate a reevaluation of those holdings.

In *Northwest Airlines,* the Supreme Court found that an employer did not have a federal statutory or common law right to contribution against a union when the employer was liable to a female employee for backpay because collectively bargained wage differentials were found to violate the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964. *Northwest Airlines,* 451 U.S. at 98, 101 S.Ct. at 1584.

The Supreme Court began its discussion by noting that a right of contribution under the Equal Pay Act or under Title VII could be created in two ways. First, the right could be stated in the statute or implied into the statute. *Id.* at 90, 101 S.Ct. at 1580. Second, it could become part of federal common law through the exercise of judicial power to fashion appropriate remedies for unlawful conduct. *Id.*

"In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, our task is one of statutory construction. (citation omitted). The ultimate question ... is whether Congress intended to create the private remedy—for example, a right of contribution...." *Id.* In order to ascertain the congressional intent, the Supreme Court directs us to consider the language of the statute itself, the legislative history, the underlying purpose and structure of the statutory scheme, and the extent to which Congress intended to supersede or to supplement existing state remedies. *Id.*

The relevant statute in this case is section 1988 of Title 42 of the United States Code. It is a remedial statute for violations of Federal Civil Rights Acts. 42 U.S.C. § 1981 *et seq.* Section 1988 governs the relief allowed for a violation of section 1983 such as the one alleged in this suit. This section provides, in pertinent part,

The jurisdiction in civil ... matters conferred on the district courts by the provisions of this Title ..., for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies ..., the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause....

42 U.S.C. § 1988. The literal wording of section 1988 does not create a right of contribution or indemnification. "This omission, although significant, is not dispositive if, among other things, the language of the statutes indicate that they were enacted for the special benefit of a class of which petitioner is a member." *Northwest Airlines*, 451 U.S. at 91–92, 101 S.Ct. at 1580–1581. It cannot be argued that section 1988 is intended to benefit one found to have violated a civil rights provision such as section 1983.

The structure of the civil rights provisions does not provide much counsel in determining whether a right to contribution and indemnification should be implied into the statute. One factor which favors such a right is that the statutes do not establish a comprehensive scheme of remedies for violations of the civil rights laws. *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (comprehensive scheme of remedies indicates that additional remedies should not be implied); *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (same). Rather, Section 1988 directs the Court to fashion appropriate remedies based upon those remedies available under state and federal rules. The section does not provide any limitation as to the types of remedies permitted.

The legislative history of section 1988 does not contain any reference, adverse or favorable, as to the right of contribution. In sum, the Court finds that there is no explicit or implied right to contribution or indemnification contained within section 1988.

As stated above, the right to contribution or indemnification may also arise through the power of the federal courts to fashion a federal common law of contribution and indemnification. *Texas Industries*, 451 U.S. at 638, 101 S.Ct. at 2065–2068. It is well known that there is "no federal *general* common law." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). However, the Supreme Court has recognized the need to formulate some "federal common law" in very limited areas, *Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2066–2067, which generally fall into two categories: those in which a federal rule is "necessary to protect a uniquely federal interest," *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964), such as the definition of rights and duties of the United States, or the resolution of interstate controversies, *Northwest Airlines*, 451 U.S. at 95, 101 S.Ct. at 1582–1583; and those in which Congress has given the court the power to develop substantive law, *Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2066–2067, such as the judiciary's right to develop a body of labor law based upon the congressional grant of power under section 301 of the Labor Management Relations Act to do such. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

The rights of contribution and indemnification are not "uniquely federal interests." Thus, these rights could only apply in civil rights actions if Congress gave the courts authority to develop federal common law which would include these rights. This Court finds that Congress intended to give the Courts wide discretion in formulating remedies to enforce provision of the Federal Civil Rights Acts when it enacted section 1988. The Supreme Court, in discussing section 1988, has stated that "the existence of a statutory right implies the existence of all necessary and appropriate remedies." *Moor v. County of Alameda*, 411 U.S. 693, 703, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973) (quoting *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969)). The Congress, through section 1988, has allowed the Courts to look to federal and state rules of damages in fashioning a remedy under *federal law* for a violation of the Federal Civil Rights Acts. *Id.* Thus, this Court finds that Congress granted the courts authority to develop a body of federal common law of remedial measures to vindicate violations of the Federal Civil Rights Acts.

The courts, however, are limited in the development of federal common law by any

constraints established by Congress. For instance, Congress may permit courts to fashion a uniform federal rule of law, *Moor*, 411 U.S. at 701–02 n. 12, 93 S.Ct. at 1792 n. 12, or, as with section 1988, Congress may permit courts to fashion a federal rule of law derived from the law of the state in which the federal court sits. *Id.* at 701, 93 S.Ct. at 1791–1792. The later type of congressional enactments can result in varying rules of federal law depending on the state in which a case is filed.

However, *of paramount importance* with regard to a defendant's alleged rights to contribution and indemnification is the fact that Congress, through section 1988, only allowed courts to fashion a remedy "for the protection of all persons in the United States in their civil rights, and for their vindication" of those rights. Section 1988 does not speak to the rights of those who violated the civil rights of another. Therefore, it does not authorize courts to fashion a body of federal law involving the rights of those who violate the civil rights of others. The rights of contribution and indemnification are not remedies for violations of federal civil rights.

Accordingly, the Court finds that Congress has not authorized the courts to develop a body of federal common law regarding the rights of the persons who violate another's civil rights.[5] Therefore, the Court finds that the City of Bridgeport and Denny's motion for summary judgment should be granted because there is no right to contribution and indemnification.[6]

In sum, the motions for summary judgment of the City of Bridgeport, Lenny Denny and the Unknown Jail Personnel of the City of Bridgeport are GRANTED. A Judgment will be entered in favor of these parties. B.J. Reynolds' motion for summary judgment is only GRANTED with respect to the equal protection claims. The City of Runaway Bay's motion for summary judgment is DENIED. This case will proceed to trial against the City of Runaway Bay and B.J. Reynolds.

---

5. Even if this Court were to find that Congress authorized the Court's to develop a body of federal common law regarding the rights of those who violated another's civil rights, the Court still finds that a defendant may not have a claim for contribution or indemnification. There is no general federal right to contribution, *Texas Industries*, 451 U.S. at 642, 101 S.Ct. at 2067–2068, or indemnification. Therefore, the Court would have to look to the state rules on contribution and indemnification. However, "we do not believe that the section [§ 1988], without more, was meant to authorize the wholesale importation into federal law of state causes of action...." *Moor*, 411 U.S. at 703–04, 93 S.Ct. at 1792–93.

6. The Legislature is the proper forum in which to obtain a change in the law involving the right of contribution and indemnification in civil rights suits.