**Raheem CREWS, Individually and as Parent of Shaheem Crews, Plaintiffs,**

v.

**COUNTY OF NASSAU, et al., Defendants.**

**No. 06–CV–2610 (JFB)(WDW).**

United States District Court, E.D. New York.

March 23, 2009.

Frederick K. Brewington and Valerie M. Cartright, Law Offices of Frederick K. Brewington, Hempstead, NY, for Plaintiffs.

Nancy Nicotra and Sondra M. Mendelson, Office of the Nassau County Attorney, Mineola, NY, for Defendants.

### MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

Plaintiff Raheem Crews ("Crews"), as an individual and as parent of Shaheem Crews (collectively, "plaintiffs"), brings this action against the County of Nassau (the "County"), County Police Commissioner James H. Lawrence, County Sheriff Edward Reilly, District Attorney Dennis Dillon, and several named and unnamed employees of the County, the County Police Department, the County Sheriff's Department and the District Attorney's Office (collectively, "defendants" or "County defendants"), alleging false arrest, unlawful imprisonment, malicious prosecution, and abuse of process under 42 U.S.C. § 1983, as well as various state law tort claims, all arising from the allegedly unlawful arrest, confinement, and prosecution of Crews.

Presently pending before the Court is defendants' motion to implead Arshad Majid("Majid") and his law firm, Majid & Associates, P.C., (collectively, "Majid and his firm"), pursuant to Rule 14(a) of The Federal Rules of Civil Procedure, and for leave to file a third-party complaint against them. Specifically, defendants seek to assert against Majid and his firm, Crews' former counsel who represented Crews during the underlying criminal proceeding, (1) a claim for negligence, based on a breach by Majid and his firm of their duty of care to the Nassau County District Attorney's Office ("DA's Office"), and (2) a claim for contribution, based on a breach by Majid and his firm of their duty of care to Crews. With respect to this third-party complaint, "[i]t is the County Defendants' position that Majid and his law firm were negligent in permitting multiple court ad-

journments, a grand jury presentation to proceed without the benefit of his client's testimony or any documentary proof that Crews was incarcerated on the actual crime date, and an arraignment on indictment to go forward while being aware that his client was incarcerated on the actual crime date of March 26, 2005." Letter to the Court, dated March 24, 2008, at 1–2. Thus, the County defendants contend "that due to this negligence, Majid and his law firm are liable to the County Defendants for all of part of Plaintiff's claims against the County Defendants." *Id.* at 3.

For the following reasons, the defendants' motion is denied in its entirety. Specifically, although the Court recognizes that leave to implead should be freely granted to promote judicial efficiency, the motion is denied under the circumstances of the instant case. First, no negligence claim by the County defendants can exist against Majid or his law firm as a matter of law, because it is axiomatic that a criminal defense attorney owes no duty of care to prosecutors in a criminal case, given the adversarial relationship and the complete absence of privity or anything approaching privity between them. Second, although the Second Circuit has not decided whether a claim for contribution is available under Section 1983, this Court joins the majority of courts that have held that no such claim for contribution is available for Section 1983 claims. Finally, with respect to whether a contribution claim could exist under New York law against Majid and his firm in connection with the pendent state law torts being asserted against the County defendants, the Court concludes that, even assuming *arguendo* that such a contribution claim could exist on the pendent claims, impleading Majid and his firm to allow such a claim is unwarranted in this case because of the potential for substantial delay, confusion of issues, and potential prejudice to the plaintiffs that could result

from the insertion of that contribution claim in this lawsuit.

## I. BACKGROUND

### A. Facts

The subject matter of the underlying case has been the focus of two prior opinions by the Court, familiarity with which is assumed for purposes of this motion. Only the relevant facts will be described briefly below.

According to the complaint, County police arrested Crews on May 27, 2005, and Crews was arraigned on a felony complaint of robbery in the first degree the following day. The felony complaint listed April 26, 2005 as the date of the alleged robbery, although the robbery actually occurred on March 26, 2005 (hereinafter, the "March 26 robbery"). Plaintiffs argue that defendants purposefully listed an inaccurate date in order to "intentionally, maliciously and/or recklessly misle[a]d" Crews and his criminal defense counsel, Majid. (Compl. ¶¶ 87 & *passim.*)

According to defendants, Assistant District Attorney ("ADA") Kevin Higgins called Majid on July 15, 2005 and told him about the error in the dates. By contrast, plaintiffs assert that ADA Higgins first told Majid about the County's error on August 15, 2005. (Compl. ¶ 124.) Subsequently, according to plaintiffs, Majid contacted Crews' family later in the day on August 15, 2005 to determine Crews' whereabouts on the actual date of the robbery and discovered that Crews had been detained at a County correctional facility from March 20, 2005 to March 31, 2005. (*Id.* ¶¶ 128, 134.) Plaintiffs allege that Majid called ADA Higgins on August 17, 2005 and told Higgins that Crews had been incarcerated at the time of the March 26 robbery, although Majid added that he had yet to confirm Crews' incarceration through documentary evidence. (Compl.

¶ 135.) Plaintiffs also allege that, on September 22, 2005, Majid spoke with another ADA assigned to Crews' case, ADA Greg Madey, and again mentioned Crews' "alibi information" for the March 26 robbery. (*Id.* ¶ 150.)

Defendants dispute that Majid provided this alibi information in mid-August 2005 and, instead, contend that the County was first notified of Crews' alibi on September 28, 2005.[1] On that date, Majid submitted a notice of alibi to the state court.

Certain other facts relating to when and if Crews' alibi was relayed to defendants are not in dispute. First, it is undisputed that, by fax dated August 23, 2005, the County notified Majid that Crews' case would be submitted to the grand jury and offered Crews the opportunity to testify before the grand jury. Although Majid received the grand jury notice after the date upon which plaintiffs allege that Majid knew of Crews' alibi, Crews did not testify before the grand jury. (Compl. ¶¶ 141–42.) Subsequently, on September 8, 2005, the grand jury indicted Crews on charges of robbery in the second degree and robbery in the third degree. Second, it is undisputed that, on September 22, 2005, Crews was arraigned on the robbery charges in state court. Although the proceeding took place after the date upon which plaintiffs allege that Majid knew of Crews' alibi, Majid failed to inform the court that Crews had been incarcerated at the time of the March 26 robbery.

Crews was released from custody on September 29, 2005, the day after Majid submitted the notice of alibi to the Nassau County Court. The County dismissed the charges against Crews on October 17, 2005.

**B. Procedural History**

On May 25, 2006, plaintiffs filed the instant action. On September 5, 2006, the case was reassigned to the undersigned. On January 30, 2007, 2007 WL 316568, the Court disqualified Majid and his firm from representing plaintiffs. On December 27, 2007, 2007 WL 4591325, the Court granted in part and denied in part the defendants' motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).

On May 2, 2008, defendants filed the instant motion. Plaintiffs submitted their opposition on June 6, 2008. Majid and his firm also submitted a response in opposition to defendants' motion on June 23, 2008, in which they also joined in the arguments set forth in plaintiffs' opposition papers. Defendants then submitted a reply on June 24, 2008. On June 27, 2008, plaintiffs further joined in the arguments set forth in Majid and his firm's opposition. The Court held oral argument on July 11, 2008. The parties submitted, at the request of the Court, further briefing on the issue of contribution with respect to the pendent state law claims, which was filed by the defendants and plaintiffs on July 25, 2008, and responded to by Majid and his firm on August 7, 2008. The Court has fully considered the submissions of the parties.

**II. STANDARD OF REVIEW**

The procedural mechanism for impleader is Rule 14 of the Federal Rules of Civil Procedure. Rule 14(a) allows a defending party to implead a party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a). "Rule 14 provides a *procedural* mechanism

---

1. Although the parties dispute when Majid told defendants about Crews' alibi, it is undisputed that Crews was detained in a County correctional facility during late March 2005, and thus could not have participated in the robbery that he was originally charged with taking part in.

whereby a defendant can have derivative, contingent claims against others not originally parties to the action adjudicated contemporaneously with the claims against it: it does not create new substantive rights against those other parties." *Shafarman v. Ryder Truck Rental, Inc.,* 100 F.R.D. 454, 458 (S.D.N.Y.1984) (citation omitted) (emphasis in original). "The Second Circuit has stated that the purpose of Rule 14(a) is 'to avoid two actions which should be tried together to save the time and cost of a re-duplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant.'" *Hicks v. Long Island R.R.,* 165 F.R.D. 377, 379 (S.D.N.Y.1996) (quoting *Dery v. Wyer,* 265 F.2d 804, 806–07 (2d Cir.1959)); *accord Mueller v. Long Island R.R.,* No. 89 Civ. 7384(CSH), 1997 WL 189123, at *6 (S.D.N.Y. Apr. 17, 1997) ("the goal of Rule 14(a) is to promote judicial efficiency by allowing the adjudication of several claims in one action") (citing *Shafarman,* 100 F.R.D. at 459).

■ A defendant may file a third-party complaint, without leave of court, within 10 days after serving the answer; thereafter, however, the third-party plaintiff must obtain leave of court to implead another party. Fed.R.Civ.P. 14(a). The decision to permit interpleader is within the discretion of the court. *Olympic Corp. v. Societe Generale,* 462 F.2d 376, 379 (2d Cir.1972); *see also Gross v. Hanover Ins. Co.,* 138 F.R.D. 53, 54 (S.D.N.Y.1991). When exercising its discretion, the court "must weigh two factors: the elimination of delay and circuity, against the danger of prejudice to the plaintiff." *Hicks,* 165 F.R.D. at 379.

■ Specifically, in determining whether to allow the filing of a third-party complaint, the Court may consider the following factors: "(1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; (3) whether impleading would prejudice the third-party defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted." *National Westminster Bank PLC v. Empire Energy Management Sys., Inc.,* No. 93 Civ. 5331(LMM), 1996 WL 709763, at *8 (S.D.N.Y. Dec. 10, 1996); *see also CSA Capital, Inc. v. Mountbatten Sur. Co.,* No. 96 Civ. 9714(DC), 1997 WL 760515, at *1 (S.D.N.Y. Dec. 9, 1997) ("Timely motions for leave to implead non-parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim") (quoting *Shafarman,* 100 F.R.D. at 459) (emphasis removed); *LNC Invs., Inc. v. First Fid. Bank, N.A.,* 935 F.Supp. 1333, 1337 (S.D.N.Y.1996) ("Leave should be granted when, after considering the delay by the movant, the complication of trial, and the merits of the proposed third-party complaint, the court concludes that the benefits of consolidation outweigh the prejudice to plaintiff and third-party defendants.") (citing *State of New York v. Solvent Chem. Co.,* 875 F.Supp. 1015, 1021 (S.D.N.Y.1995)).

## III. DISCUSSION

Again, Rule 14 provides only the procedural mechanism for impleader; the substantive merit of the action depends on the federal or state theory of contribution, indemnity or subrogation, or any other theory asserted in the third-party complaint. *LNC Invs., Inc.,* 935 F.Supp. at 1338; *accord McLaughlin v. Biasucci,* 688 F.Supp. 965, 967 (S.D.N.Y.1988); *Shafarman,* 100 F.R.D. at 458.

Here, defendants seek to assert a negligence claim against Majid and his firm, as well as a claim for contribution under Section 1983 and under the pendent state claims. The Court discusses each in turn.

### A. Negligence

■ Under New York law, a plaintiff must establish the following elements to prove negligence: (1) that a duty of care was owed by the defendant to the plaintiff; (2) that the defendant breached that duty; (3) that the defendant's breach was a proximate cause of the plaintiff's injuries; and (4) that plaintiff was damaged. *See Van Nostrand v. Froehlich,* 44 A.D.3d 54, 844 N.Y.S.2d 293, 293 (2007); *Luina v. Katharine Gibbs School N.Y., Inc.,* 37 A.D.3d 555, 830 N.Y.S.2d 263, 263 (2007); *Talbot v. N.Y. Inst. of Tech.,* 225 A.D.2d 611, 639 N.Y.S.2d 135, 135 (1996). Because the Court finds that defendants' potential claim against Majid and his firm would fail, as a matter of law, to establish the first element of negligence, defendants' motion to bring a third-party complaint on these grounds is denied.

■ Indeed, "[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm. While the Legislature can create a duty by statute, in most cases duty is defined by the courts, as a matter of policy." *Lauer v. City of New York,* 95 N.Y.2d 95, 100, 711 N.Y.S.2d 112, 733 N.E.2d 184 (N.Y.2000) (internal citations omitted). The New York Court of Appeals has warned, however, that "[f]ixing the orbit of duty may be a difficult task. Despite often sympathetic facts in a particular case before them, courts must be mindful of the precedential,

and consequential, future effects of their rulings, and limit the legal consequences of wrongs to a controllable degree." *Id.* (citations and quotation marks omitted).

In seeking to assert a third-party complaint against Majid and his firm based on negligence, defendants argue that Majid and his firm owed the ADAs who were prosecuting Crews' criminal case a duty of care because they had, or should have had, a reason to believe that the ADAs would rely upon Majid and his firm's oral and written representations when determining whether or not to proceed with Crews' prosecution. (Defendants' Memorandum of Law, at 3.) However, defendants do not point to any statute or case creating such a duty upon a criminal defense attorney under these circumstances.[2]

■ Rather, relevant decisions by New York courts make abundantly clear that an attorney does not owe a duty of care to an adversary. Indeed, courts have consistently acknowledged "the well-settled principle that an attorney for one party to litigation is not liable, as a matter of law, for the negligence of the opposing party's attorney." *Aglira v. Julien & Schlesinger, P.C.,* 214 A.D.2d 178, 183, 631 N.Y.S.2d 816 (N.Y.App.Div.1995); *McLaughlin,* 688 F.Supp. at 968 ("the general rule is that an attorney owes no duty to third parties for acts committed in the good faith performance of his obligations to his clients") (citing *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1080 (2d Cir. 1977)). "While 'professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with

---

**2.** For example, by attempting to bring a common law negligence claim, defendants do not contend that Majid and his law firm acted in violation of N.Y. Jud. Law § 487, which allows for civil actions arising from deceit or collusion in judicial proceedings. "Section

487 claims have been routinely upheld when brought against an adversary's counsel." *Trepel v. Dippold,* No. 04 Civ. 8310(DLC), 2005 WL 1107010, at *5, 2005 U.S. Dist. LEXIS 8541, at *14–*15 (S.D.N.Y. May 9, 2005) (citations omitted).

their clients,' *Murphy v. Kuhn*, 90 N.Y.2d 266, 682 N.E.2d 972, 974, 660 N.Y.S.2d 371 (N.Y.1997) (citation omitted), '[a]n attorney does not owe a duty of care to his adversary.' " *Trepel v. Dippold*, No. 04 Civ. 8310(DLC), 2006 WL 3054336, at *6, 2006 U.S. Dist. LEXIS 78050, at *19 (S.D.N.Y. Oct. 27, 2006) (citing *Aglira*, 214 A.D.2d at 178, 631 N.Y.S.2d 816). "When 'attorneys engage in face to face negotiations with an adversarial party, New York courts have held that they do not have a duty of care to the third party even if that party with the attorney's knowledge relies on the attorney's representation.' " *Rogath v. Koegel*, No. 96 Civ. 8729(DAB), 1998 WL 695668, at *5 n. 11, 1998 U.S. Dist. LEXIS 15624, at *18 n. 11 (S.D.N.Y. Oct. 2, 1998) (quoting *Crossland Savings FSB v. Rockwood Ins. Co.*, 700 F.Supp. 1274, 1281 (S.D.N.Y.1988)).

■ In this case, the allegations contained in the complaint and proposed third-party complaint state that Majid and his firm acted as counsel for Crews in the underlying criminal action. As such, Majid and his firm owed a duty of reasonable care only to Crews and owed no duty of care to the ADAs prosecuting Crews' case. *Accord Aglira*, 214 A.D.2d at 184, 631 N.Y.S.2d 816; *Trepel*, 2006 WL 3054336, at *6, 2006 U.S. Dist. LEXIS 78050, at *20 ("As attorneys for Trepel's adversary, Dippold and the Beldock Firm cannot be held liable for negligent misrepresentation to Trepel."); *cf. Ambra v. Awad*, 16 Misc.3d 1128(A), 2007 N.Y. Slip Op. 51625(U), 2007 WL 2409600, at *12 (N.Y.Sup.Ct. Aug. 6, 2007) (allowing impleader where the defendants "had an *express duty* to provide information, imposed upon them by two Court orders and the law and rules pertaining to discovery.") (emphasis added).

Therefore, as stated *supra* and contrary to defendants' assertions, "[a]n attorney does not owe a duty of care to his adversary or one with whom he is not in privi-

ty." *Aglira*, 214 A.D.2d at 183, 631 N.Y.S.2d 816. However, a narrow exception to the general rule that an attorney does not owe a duty of care to a non-client exists where "there [is] either actual privity of contract between the parties or a relationship so close as to approach that of privity." *Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318, 322 (1992). Defendants rely on this case to support their contention that Majid and his firm owed a duty of care to a non-client, namely, the Nassau County DA's Office. (Defendants' Memorandum of Law, at 15.) In that case, the New York Court of Appeals held that an attorney could be liable to a third party if he were aware that the opinion letter he prepared was to be used for commercial purposes and would be justifiably relied upon by the party to whom it was sent. *See id.*, 590 N.Y.S.2d 831, 605 N.E.2d at 322.

This exception is construed narrowly, however, because "our courts have not extended liability in situations where the negligence caused injury to a third party with whom there was no privity." *Federal Ins. Co. v. North Am. Specialty Ins. Co.*, 47 A.D.3d 52, 847 N.Y.S.2d 7, 14 (2007) (citing *Council Commerce Corp. v. Schwartz, Sachs & Kamhi*, 144 A.D.2d 422, 424, 534 N.Y.S.2d 1 (N.Y.App.Div.1988)). "New York's narrow exception to the requirement of actual privity ... has been applied by the New York courts only when an attorney has furnished specific advice to a third party, when that advice was the 'end and aim' of the transaction, when the attorney intended the third party to rely on that advice, and when the third party's reliance thereon was foreseeable. It makes sense to hold the attorney liable in such situations because the third party has entrusted its legal affairs to the attorney and reasonably has relied, to its detriment, on the attorney's professional expertise.

It makes sense also to limit an attorney's malpractice liability to non-clients, because absent contractual privity or a relationship approaching privity, the 'duty' element of a negligence claim is missing." *LNC Invs., Inc.,* 935 F.Supp. at 1351; *see also Gaddy v. Eisenpress,* No. 99 Civ. 3781(DAB), 1999 WL 1256242, at *5–*6, 1999 U.S. Dist. LEXIS 19710, at *16–*17 (S.D.N.Y. Dec. 22, 1999); *I.L.G.W.U. Nat'l Ret. Fund v. Cuddlecoat, Inc.,* No. 01 Civ. 4019(BSJ), 2004 WL 444071, at *2–*3, 2004 U.S. Dist. LEXIS 3764, at *8–*9 (S.D.N.Y. Mar. 10, 2004).

Defendants argue that the application of this exception is warranted here. However, the Court finds that no relationship between the ADAs and Majid and his firm as one "approaching privity" is even arguably alleged here. Tellingly, defendants can point to no case imposing a duty of care in a similar context, and the cases cited as support for their motion are simply inapposite. This is not a case of misrepresentations relied upon in an opinion letter, as in *Prudential* or in *Vereins–Und Westbank AG v. Carter,* 691 F.Supp. 704, 710 (S.D.N.Y.1988), or the reliance on an attorney and his firm to investigate a potential investment, as in *McLaughlin,* 688 F.Supp. at 969. As defendants conceded at oral argument, they have not located any case for the proposition that in a criminal proceeding, defense counsel has a duty of care to the prosecutor or may have a relationship approaching privity such that the defense counsel would be liable for his failure to affirmatively and immediately disclose exculpatory or alibi information regarding his client.

In sum, the Court denies defendants' motion for leave to file a third party complaint to assert a claim of negligence against Majid and his law firm. Because the Court finds Majid and his firm did not owe defendants a duty of care, defendants, as third-party plaintiffs, cannot assert a negligence claim against Majid or his firm as a matter of law. *See Gaddy v. Eisenpress,* 1999 WL 1256242, at *6, 1999 U.S. Dist. LEXIS 19710, at *16–*17 ("To permit Plaintiff's general negligence claim against Defendant Costello, would in effect, permit Plaintiff to make an end run around New York privity requirements. Further, as Judge Mukasey has concluded, 'it make [sic] sense ... to limit an attorney's malpractice liability ... because absent contractual privity or a relationship approaching privity, the "duty" element of a negligence claim is missing.' *LNC Investments,* 935 F.Supp. at 1351. Thus, for the reasons stated, Plaintiff's proposed addition of a claim for general negligence is barred as futile."); *cf. I.L.G.W.U. Nat'l Ret. Fund,* 2004 WL 444071, at *3, 2004 U.S. Dist. LEXIS 3764, at *8–*9 ("The special relationship required for a negligent misrepresentation tort has been described as either actual privity of contract between the parties or a relationship so close as to approach that of privity. Warren has not alleged the existence of such a relationship, therefore the claim of negligent misrepresentation is DISMISSED.") (citation and quotation marks omitted). Accordingly, the Court denies defendants leave to implead Majid or his firm to file such a claim because they have failed to state a claim upon which relief may be granted and any such claim is barred as a matter of law under the allegations of this case. *Shafarman v. Ryder Truck Rental, Inc.,* 100 F.R.D. 454, 459 (S.D.N.Y.1984) (motions to implead non-parties should not be granted if it would "foster an obviously unmeritorious claim"); *accord Fashion-in-Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P.,* No. 97 Civ. 0340, 1999 WL 500149, at *2 (S.D.N.Y. July 15, 1999).

### B. Contribution

#### 1. Section 1983

With respect to defendants' claim for contribution against Majid and his firm

for defendants' potential liability under Section 1983, the Court also finds that any such claim would fail as a matter of law. Although "courts have struggled with [the right to contribution under § 1983] and have reached different conclusions," *Mason v. City of New York*, 949 F.Supp. 1068, 1079 (S.D.N.Y.1996) (quoting *Harris v. Angelina County*, 31 F.3d 331, 338 & n. 9 (5th Cir.1994)), and there is no Second Circuit or Supreme Court precedent, the Court agrees with the majority of courts that have confronted the issue and found that no such claim for contribution is available for Section 1983 actions. *See Rodriguez v. City of New York*, No. 06 Civ. 9438(LAK), 2007 WL 4145407, at *2 (S.D.N.Y. Nov. 16, 2007); *Hayden v. Hevesi*, No. 05 Civ. 0294E (SR), 2007 WL 496369, at *4 (W.D.N.Y. Feb. 12, 2007); *M.O.C.H.A. Society, Inc. v. City of Buffalo*, 272 F.Supp.2d 217, 221 (W.D.N.Y.2003); *Koch v. Mirza*, 869 F.Supp. 1031, 1040–42 (W.D.N.Y.1994); *Hughes v. Adams*, No. 5:06–CVP176–R, 2007 WL 3306076, at *2 (W.D.Ky. Nov. 6, 2007); *Katka v. Mills*, 422 F.Supp.2d 1304, 1307 (N.D.Ga. March 23, 2006); *Frantz v. City of Pontiac*, 432 F.Supp.2d 717, 722 (E.D.Mich.2006); *Hart v. City of Williamsburg, Ky.*, No. 6:04–321–DCR, 2005 WL 1676894, at *3 (E.D.Ky. July 16, 2005); *Hepburn ex rel. Hepburn v. Athelas Institute, Inc.*, 324 F.Supp.2d 752, 757 (D.Md.2004); *Wright v.* *Reynolds*, 703 F.Supp. 583, 590 (N.D.Tex. 1988); *Gray v. City of Kansas City*, 603 F.Supp. 872, 875 (D.Kan.1985); *cf. Allen v. City of Los Angeles*, 92 F.3d 842, 845 n. 1 (9th Cir.1996) ("There is no federal right to indemnification provided in 42 U.S.C. § 1983."), *overruled on other grounds sub nom., Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.1997) (en banc); *Jackson v. Hoffman*, No. 91–4054(RDR), 1994 WL 114007, at *2 (D.Kan. Mar. 24, 1994) (striking allegations by defendants that, *inter alia*, plaintiff's attorney was contributorily negligent and stating that "comparative negligence is not applied in § 1983 actions"); *Banks v. City of Emeryville*, 109 F.R.D. 535, 539 (N.D.Cal.1985) (holding that there is no right to indemnification under Section 1983). *But see Miller v. Apartments and Homes of New Jersey, Inc.*, 646 F.2d 101, 108 (3d Cir.1981) (finding an implied right to contribution as matter of federal common law);[3] *Klaitz v. State of New Jersey*, No. 04 Civ. 529(RBK), 2006 WL 1843115, at *6 (D.N.J. June 30, 2006) (acknowledging that courts outside of the Third Circuit have refused to recognize a right to contribution under Section 1983 but following Third Circuit precedent in *Miller*); *Alexander v. Hargrove*, No. 93 Civ. 5510, 1994 WL 444728, at *1 (E.D.Pa. Aug. 16, 1994); *Fishman v. De Meo*, 604 F.Supp. 873, 877 (E.D.Pa. 1985).

---

**3.** As the Fifth Circuit has observed, *"Miller* is of questionable precedential value because in 1981 the Supreme Court decided two important contribution cases." *Harris v. Angelina County, Texas*, 31 F.3d 331, 338 n. 9 (discussing *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (holding that there is no right to contribution under Title VII and the Equal Pay Act) and *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (holding that there is no contribution under the federal antitrust laws)); *accord Gray*, 603 F.Supp. at 875 ("*Miller* was decided prior to the Su-

preme Court's decisions in *Northwest Airlines* and *Texas Industries*. Those subsequent decisions have entirely undermined the *Miller* analysis."). Moreover, *Miller* may be distinguishable from this case because, "in *Miller*, the Court addressed the right to contribution among co-defendants as opposed to the question of whether a defendant could assert a third party complaint against another party based upon the alleged violation of the rights of the plaintiff." *Klaitz v. State of New Jersey*, No. 04 Civ. 529(RBK), 2006 WL 1843115, at *6 (D.N.J. June 30, 2006) (citations omitted). This distinction is discussed *infra*.

In *Mason v. City of New York*, 949 F.Supp. 1068, 1077 (S.D.N.Y.1996), the court undertook a persuasive analysis of this issue. There, the court analyzed the availability of setoff to non-settling tortfeasors, as well as the right of contribution between joint tortfeasors, under Section 1983. *See id.* The silence in Section 1983, which does not expressly provide for a right to contribution, "necessitat[ed] reference" to 42 U.S.C. § 1988 ("Section 1988"),[4] which "authorize[s] federal courts, where federal law is unsuited or insufficient 'to furnish suitable remedies [in a civil rights action], to look to principles of the common law, as altered by state law,' so long as such principles are not inconsistent with the Constitution and laws of the United States." *Moor v. County of Alameda*, 411 U.S. 693, 702–03, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Indeed, "[Section 1988] recognizes that ... federal law simply does not 'cover every issue that may arise in the context of a federal civil rights action.'" *Robertson v. Wegmann*, 436 U.S. 584, 588, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (quoting *Moor*, 411 U.S. at 703, 93 S.Ct. 1785). Thus, "[w]hen construing Section 1988, 'both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes.'" *Moor*, 411 U.S. at 703, 93 S.Ct. 1785 (quoting *Sullivan v. Little*

*Hunting Park, Inc.*, 396 U.S. 229, 240, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969)).

■ The three-step analysis under Section 1988 is summarized as follows:

Section 1988 therefore requires courts first to determine whether 'suitable' federal law exists. If it does not, the relevant state law must be compared with principles underlying Sections 1983 and 1988. "If there is no inconsistency between these two bodies of law, the state law solution to the problem will be applied. If there is an inconsistency, the state law must be rejected, and this court must fashion an appropriate remedy to carry out the congressional purposes behind the civil rights legislation."

*Mason*, 949 F.Supp. at 1077 (quoting *Goad v. Macon County, Tennessee*, 730 F.Supp. 1425, 1426 (M.D.Tenn.1989)). Although the *Mason* court cautioned that "whether the availability of contribution even merits application of the Section 1988 test is a threshold issue that is the subject of some debate," 949 F.Supp. at 1079, this Court agrees that, to the extent that "the propriety of Section 1988's application to the issue of contribution under Section 1983 remains something of an open question, the Court applies the Section 1988 test."[5] *Id.*; *cf. Dobson v. Camden*, 705 F.2d 759, 768 (5th Cir.1983), *rev'd on other grounds*,

---

**4.** Section 1988 provides in relevant part:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State

wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988(a).

**5.** Section 1988 was not relevant to the Supreme Court's analyses in either *Northwest Airlines* or *Texas Industries*, but this Court nevertheless finds those cases instructive here. *See Gray*, 603 F.Supp. at 875.

725 F.2d 1003 (5th Cir.1984) (applying Section 1988 to analysis of setoffs resulting from settling tortfeasors under Section 1983); *Johnson v. Rogers,* 621 F.2d 300, 304 n. 6 (8th Cir.1980) (same). Because the Court finds that, assuming *arguendo* that Section 1988 does apply and that state law contribution claims may be drawn upon in this context, the application of New York law would conflict with the purposes of Section 1983 and should therefore not be permitted, defendants' motion is denied with respect to a claim for contribution under Section 1983.

First, it is clear that, as an initial matter, federal law does not provide a basis for contribution for liability under Section 1983. As stated *supra,* the language of the statute itself provides no basis for a right of contribution. *Accord Carrion v. The City of New York,* No. 01 Civ. 2255 (LAKDF), 2002 WL 31107747, at *3 (S.D.N.Y. Sept. 23, 2002); *Rosado v. New York City Housing Authority,* 827 F.Supp. 179, 183 (S.D.N.Y.1989). The Court recognizes that "[e]ven though Congress did not expressly create a contribution remedy, if its intent to do so may fairly be inferred from [the statute], an implied cause of action for contribution could be recognized." *Northwest Airlines,* 451 U.S. at 90, 101 S.Ct. 1571; *accord Texas Industries, Inc.,* 451 U.S. at 639, 101 S.Ct. 2061 ("There is no allegation that the antitrust laws expressly establish a right of action for contribution. Nothing in these statutes refers to contribution, and if such a right exists it must be by implication. Our focus, as it is in any case involving the implication of a right of action, is on the intent of Congress"). However, defendants do not point to any indication that this was the case, and the Court is not aware of any legislative or statutory analysis suggesting it, either. *See Northwest Airlines,* 451 U.S. at 91, 101 S.Ct. 1571 ("Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies."); *see also Koch,* 869 F.Supp. at 1041 (examining the history of Sections 1983 and 1988 and concluding that contribution is inconsistent with the constitutional values sought to be vindicated in a Section 1983 action); *Katka,* 422 F.Supp.2d at 1309 ("No party has pointed the court to any discussion in the legislative history of § 1983 that would indicate that Congress considered whether a right of contribution was available to defendants in a § 1983 action.").

Indeed, this interpretation of Section 1983 is consistent with the idea that contribution rights should not be read into federal statutes to protect the persons regulated by the statute, at the expense of the persons protected by the statute. *See Northwest Airlines, Inc.,* 451 U.S. at 91–92, 101 S.Ct. 1571 ("Neither the Equal Pay Act nor Title VII expressly creates a right to contribution in favor of employers.... [I]t cannot possibly be said that employers are members of the class for whose especial benefit either the Equal Pay Act or Title VII was enacted."); *Texas Industries, Inc.,* 451 U.S. at 639, 101 S.Ct. 2061 ("Moreover, it is equally clear that the Sherman Act and the provision for treble-damages actions under the Clayton Act were not adopted for the benefit of the participants in a conspiracy to restrain trade. On the contrary, petitioner is a member of the class whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class.... The absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow of joint wrongdoers ... [indicates] that Congress neither expressly or implicitly intended to create a right to contribution")

(internal quotations and citations omitted); *Anderson v. Local Union No. 3, Int'l Brotherhood of Electrical Workers,* 751 F.2d 546, 548 (2d Cir.1984) (extending the rationale of *Northwest Airlines* to claims for contribution under 42 U.S.C. § 1981 and stating that "[t]he legislative scheme for Title VII enforcement would, indeed, be disrupted if defendants found liable under both Title VII and § 1981 were permitted to bring actions among themselves."); *Banks ex rel. Banks v. Yokemick,* 177 F.Supp.2d 239, 249 (S.D.N.Y. 2001) ("[Section 1983's] central aim may be viewed as a double-edged sword whose dual aspect is designed to protect and deter, to benefit the victim while penalizing the offender."); *Wright v. Reynolds,* 703 F.Supp. 583, 592 (N.D.Tex.1988) ("Congress, through section 1988, only allowed courts to fashion a remedy for the protection of all persons in the United States in their civil rights, and for their vindication of those rights. Section 1988 does not speak to the rights of those who violated the civil rights of another. Therefore, it does not authorize courts to fashion a body of federal law involving the rights of those who violate the civil rights of others.") (quotation marks omitted); *cf. Gray,* 603 F.Supp. at 874 ("[Section 1983 is] expressly directed against anyone (such as these defendants) accused of the acts alleged in plaintiff's complaint. Although [this statute is] less comprehensive than either Title VII or the Equal Pay Act (a factor cited in *Northwest Airlines* as tending to negate any implied contribution remedy under those statutes), we attach little weight to this distinction. The federal anti-trust laws are at least as skeletal as these civil rights statutes, and yet they have been held to create no implied cause of action for contribution.").

Looking beyond the availability of an express or implied right of contribution provided within the statute, the Court fur-

ther notes that although "a cause of action for contribution may have become a part of the federal common law through the exercise of judicial power to fashion appropriate remedies for unlawful conduct," *Northwest Airlines,* 451 U.S. at 91, 101 S.Ct. 1571, it is well-established that there is no "general federal common-law right to contribution." *Texas Industries, Inc.,* 451 U.S. at 642, 101 S.Ct. 2061 (citing *Northwest Airlines,* 451 U.S. at 96–97, 101 S.Ct. 1571).

Thus, the Court turns to the possible application of contribution rights provided by state law. Indeed, "[a]t common law there was no right to contribution among joint tortfeasors. In most American jurisdictions, however, that rule has been changed either by statute or by judicial decision." *Northwest Airlines,* 451 U.S. at 86–87, 101 S.Ct. 1571. Under New York law, pursuant to statute, a right of contribution among joint, concurrent, successive, independent, alternative, and even intentional, tortfeasors is available. *See* C.P.L.R. § 1401; *see also Schauer v. Joyce,* 54 N.Y.2d 1, 5, 444 N.Y.S.2d 564, 429 N.E.2d 83 (N.Y.1981). This applies regardless if the underlying theories of liability vary among the tortfeasors. *See Raquet v. Braun,* 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997). As discussed in detail *supra* in connection with the pendent state law claims, it is entirely unclear that a right to contribution would exist under New York law given the allegations and particular circumstances of the instant case. However, for purposes of this analysis, the Court assumes that such a right to contribution would exist under New York law generally in these situations.

Continuing with the analysis, the Court next asks whether this right of contribution among tortfeasors under New York law is consistent with the policies behind

Section 1983. "In resolving questions of inconsistency between state and federal law raised under § 1988, courts must look not only at particular federal statutes and constitutional provisions, but also at the policies expressed in [them]. Of particular importance is whether application of state law would be inconsistent with the federal policy underlying the cause of action under consideration." *Robertson*, 436 U.S. at 590, 98 S.Ct. 1991 (internal quotation marks and citations omitted). Because "[t]he policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law," *id.* at 590–91, 98 S.Ct. 1991, and deterrence of these abuses of power by state actors is reduced by the possibility that defendants may seek contribution, permitting a right to contribution in this context may weaken one of the primary purposes of Section 1983. *Accord Dobson*, 705 F.2d at 765 ("If people acting under color of state law know that they will bear the consequences of their actions, they will be deterred from violating a person's federal rights, but will not be over-deterred."); *Mason*, 949 F.Supp. at 1079 ("Accordingly, contribution among joint tortfeasors in Section 1983 cases would conflict impermissibly with the statutory goal of deterrence and is impermissible under the third prong of the Section 1988 test."); *Koch*, 869 F.Supp. at 1041 (holding that principles of contribution are inconsistent with the constitutional values sought to be vindicated in a Section 1983 action); *Athelas Institute, Inc.*, 324 F.Supp.2d at 759 ("Section 1983's twin goals of compensation and deterrence are not furthered by reducing the defendants' costs of violations while placing the risk of an insolvent defendant on the plaintiff"). In short, the Court agrees that a claim for contribution was not contemplated by the statute and would be inconsistent with its purpose of deterring the deprivation of constitutional rights under color of state law.

In light of this authority, there is no need for the Court to fashion a remedy for contribution at federal common law. The Supreme Court has stated that "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Texas Industries, Inc.*, 451 U.S. at 641, 101 S.Ct. 2061. However, none of these "narrow areas" apply in this context. *See Northwest*, 451 U.S. at 86, 101 S.Ct. 1571; *Hart*, 2005 WL 1676894, at *3 ("The *Northwest* Court found that none of these 'narrow areas' provided authority for it to create a federal common law right to contribution under either Title VII or the Equal Pay Act. That analysis is equally applicable in a § 1983 action.") (citation omitted); *Gray*, 603 F.Supp. at 874–75 ("The Supreme Court found that none of these 'narrow areas' provided authority for it to create a federal common law right to contribution under either Title VII or the Equal Pay Act. *Northwest Airlines*, 451 U.S. at 98, 101 S.Ct. at 1584. That analysis seems equally applicable to 42 U.S.C. §§ 1981 & 1983."). Moreover, even if Congress did grant the courts authority to create a right of contribution as a matter of federal common law pursuant to Section 1988, as discussed *supra*, the purposes behind Section 1983 would not be furthered by permitting a right to contribution in cases like this one. *Accord Hayden*, 2007 WL 496369, at *4 ("[T]here is also no statutory basis found in § 1983 for a right of contribution and the Court will not construe one.") (citing *Northwest Airlines*, 451 U.S. at 77, 101 S.Ct. 1571); *Koch*, 869 F.Supp. at 1041 ("Principles of contribu-

tion and indemnity are not of assistance to federal civil rights plaintiffs in pursuing their claims, and may inject issues into the litigation which could interfere with the prompt and orderly trial of such cases ... Allowing a claim for contribution or indemnification by reference to state common law or statutory laws under 42 U.S.C. § 1988, is irrelevant to and inconsistent with the purpose and policy of the federal civil rights laws, and is, therefore, specifically excluded from consideration under 42 U.S.C. § 1988."); *Wright v. Reynolds,* 703 F.Supp. 583, 590 (N.D.Tex.1988) ("Congress, through section 1988, only allowed courts to fashion a remedy ... [to protect the civil rights] of all persons in the United States ... [and therefore] does not authorize courts to fashion a body of federal law involving the rights of those who violate the civil rights of others"). *But see Miller,* 646 F.2d at 108.

This is especially true where, as here, the third party from whom contribution is sought is not directly sued by the plaintiff and presumably had no personal involvement in the alleged constitutional violation. *See Koch,* 869 F.Supp. at 1041; *accord Diaz–Ferrante v. Rendell,* No. Civ.A. 95–5430, 1998 WL 195683, at *4 (E.D.Pa. Mar. 30, 1998) (declining to follow *Miller,* 646 F.2d at 105, which involved joint violators of federal rights, in case where "there is no civil rights claim against the third party plaintiff"). In *Rosado v. New York City Housing Authority,* 827 F.Supp. 179, 184, the court reasoned similarly. In that case, a defendant sought contribution against the City of New York pursuant to C.P.L.R. § 1401, based on a theory of negligence. The Court concluded that "incorporating N.Y.C.P.L.R. § 1401 into 42 U.S.C. § 1983 would be inconsistent with the Constitution and laws of the United States," because "liability under § 1983 requires that the City had an unconstitutional municipal custom, practice or policy causing a constitutional violation." *Id.* (quotation marks omitted). That reasoning applies here, where Majid is not alleged to have any possible liability under Section 1983 and, thus, allowing contribution against him would be fundamentally inconsistent with the federal statute. Indeed, to hold otherwise would essentially "authorize the wholesale importation into federal law" of a state cause of action, and one that is not even necessarily designed to protect federal civil rights. *Moor,* 411 U.S. at 703, 93 S.Ct. 1785. "The result would effectively be to subject [Majid and his firm] to federal court suit on a federal civil rights claim." *Id.* at 706, 93 S.Ct. 1785 (holding that a California law that imposed vicarious liability on municipalities could not be imported to Section 1983 claims pursuant to Section 1988, because such a result would be inconsistent with federal law).

In sum, although there is no binding precedent on the issue, this Court agrees with the clear majority of courts that, in general, permitting a right of contribution under Section 1983 would conflict with the policies underlying the statute and is, therefore, inapplicable to defendants in Section 1983 actions. More importantly, it is inconsistent with federal law where the potential third-party defendants have no personal involvement in the alleged constitutional violation. Accordingly, because as a matter of law there is no contribution claim for Section 1983 liability, the Court denies defendants' motion to implead Majid and his firm to add such a third-party claim.[6]

---

**6.** The Court notes that, even assuming *arguendo* that a third-party negligence claim or contribution claim could plausibly exist in this case under Section 1983 (which it does not), the Court would still deny the motion to implead because of the other factors identified in connection with the pendent state law claims *infra.*

## 2. Pendent State Law Claims

Although the Court has concluded that the defendants' motion to implead Majid and his firm to file negligence and Section 1983 contribution claims should be denied because such claims fail as a matter of law in this case, the Court also must examine (1) whether a contribution claim could exist against Majid and his firm with respect to the separate, pendent state law claims that Crews has asserted, and (2) if so, whether the Court should permit that claim to be impleaded into this lawsuit under the other Rule 14(a) factors. Specifically, in his complaint, Crews asserts the following state law claims against the defendants: (1) assault; (2) battery; (3) unlawful imprisonment; (4) outrageous conduct / intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) malicious prosecution; (7) abuse of process; and (8) intentional/reckless supervisory misconduct. Defendants argue that, if plaintiffs are able to recover on any of these state law claims against the defendants, based on Crews' alleged unjustified incarceration and other damages, the defendants should be able to seek contribution from Majid and his firm because, according to defendants, their alleged negligent acts in failing to advise the prosecutors or the court of an irrefutable alibi contributed to any such injuries. In other words, defendants are, in essence, asserting that the tort of legal malpractice by Majid and his firm (even though not asserted by Crews) allows for a contribution claim by defendants for any injuries simultaneously caused by their torts relating to, among other things, false imprisonment and malicious prosecution under state law.

As set forth below, it is questionable under New York law whether, where County defendants are alleged to have committed torts against an individual arising from an arrest and prosecution, such County defendants could assert a contribution claim against the individual's criminal defense attorney arising from the attorney's alleged malpractice. Moreover, even assuming *arguendo* such a cause of action could exist, the Court concludes that, after a careful analysis of all of the factors under Rule 14(a), impleading any such claim into this case is not warranted because it will lead to potential delay, confusion, complication of legal and factual issues, and potential prejudice to plaintiffs.

### (1) New York Law of Contribution

"The source of a right of contribution under state law must be an obligation imposed by state law." *LNC Invs., Inc.,* 935 F.Supp. at 1349. The applicable statute in New York, C.P.L.R. § 1401, provides, in relevant part, that

> two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

N.Y. Civ. Prac. L. & R. § 1401. "An action for contribution may be maintained between 'concurrent, successive, independent, alternative, and even intentional tortfeasors,' *Board of Ed. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 27–28, 523 N.Y.S.2d 475, 478, 517 N.E.2d 1360 (1987), who have caused the 'same injury' to plaintiff. *Nassau Roofing & Sheet Metal Co. v. Facilities Development Corp.,* 71 N.Y.2d 599, 603, 528 N.Y.S.2d 516, 518, 523 N.E.2d 803 (1988)." *LNC Invs., Inc.,* 935 F.Supp. at 1346.

Defendants seek to implead Majid for contribution on the state law claims, based on the theory that Majid is liable to Crews for attorney malpractice. As an initial matter, legal malpractice, a species of negligence, is the appropriate

cause of action to bring against an attorney who allegedly performed his/her professional duties negligently. *See Mecca v. Shang*, 258 A.D.2d 569, 570, 685 N.Y.S.2d 458 (N.Y.App.Div.1999); *Sage Realty Corp. v. Proskauer Rose, LLP*, 251 A.D.2d 35, 38–39, 675 N.Y.S.2d 14 (N.Y.App.Div. 1998). A legal malpractice claim in New York requires a plaintiff to demonstrate three elements: (1) the negligence of the attorney, (2) that the negligence was the proximate cause of the damages sustained, and (3) proof of actual damages. *See Mendoza v. Schlossman*, 87 A.D.2d 606, 448 N.Y.S.2d 45 (N.Y.App.Div.1982). "In determining whether a valid third-party claim for contribution exists, the critical issue is whether the third-party defendant owed a duty to the plaintiff which was breached and which contributed to or aggravated plaintiff's damages." *Aglira*, 214 A.D.2d at 183, 631 N.Y.S.2d 816 (quoting *Rosner v. Paley*, 65 N.Y.2d 736, 738, 492 N.Y.S.2d 13, 481 N.E.2d 553 (N.Y.1985))

(quotation marks and alteration omitted). A "plaintiff must not only prove lack of reasonable care; plaintiff must also establish that he would have been successful in the underlying action, if his attorney had exercised due care." *Parksville Mobile Modular, Inc. v. Fabricant*, 73 A.D.2d 595, 599, 422 N.Y.S.2d 710 (N.Y.App.Div.1979). In other words, plaintiff must establish that "but for" defendants' negligence, plaintiff would have won his case. *See Stroock & Stroock & Lavan v. Beltramini*, 157 A.D.2d 590, 591, 550 N.Y.S.2d 337 (N.Y.App.Div.1990) (to state a viable legal malpractice claim, plaintiff must show how she "would have prevailed in the underlying action but for her attorneys' malpractice").[7]

### (2) Application

As a threshold matter, it is entirely unclear whether any contribution claim could exist in the instant case under New York

---

**7.** In supplemental briefing that the Court requested after oral argument, plaintiffs (and Majid in a separate letter) both argue that no legal malpractice claim by Crews can exist against Mr. Majid as a matter of New York law because Crews was never convicted. *See* Letter of Plaintiffs' Counsel, dated July 25, 2008, at 2 ("Because Majid successfully represented and defended Raheem Crews against the purposefully falsified criminal charges he faced, there is no conviction which may now be challenged. Thus, Majid is not, and cannot be a tortfeasor"); Letter of Mr. Majid, dated August 6, 2008, at 1 ("pursuant to New York State law, the plaintiff cannot allege any legal malpractice against me as the prerequisite to any such claim would be his conviction on the charges which were filed against him by the defendants."). That contention is simply incorrect. The Court recognizes well-settled New York case authority that a conviction precludes a cause of action by a plaintiff for legal malpractice arising from negligent representation in a criminal proceeding, because the conviction deprives plaintiff of a colorable claim of innocence that would be necessary to establish proximate causation in a malpractice action. *See Britt v. Legal Aid*

*Society, Inc.*, 95 N.Y.2d 443, 448, 718 N.Y.S.2d 264, 741 N.E.2d 109 (N.Y.2000). However, the preclusive effect of a conviction does not mean that prosecutions that terminate in a client's favor short of conviction are not actionable legal malpractice cases. Instead, for purposes of overcoming this barrier for a legal malpractice claim in connection with a criminal case, all that is required is that the client be able to show that the criminal proceeding has been terminated without a conviction. *See Britt*, 95 N.Y.2d at 448, 718 N.Y.S.2d 264, 741 N.E.2d 109 ("[i]t is only when the criminal proceeding has been terminated without a conviction that a plaintiff can assert innocence or at the very least a colorable claim thereof" and bring a legal malpractice action). In other words, it is the favorable termination at some point in the criminal proceeding, not a conviction (and a later overturning), that is the critical element in this regard. Thus, contrary to plaintiffs' contention, a legal malpractice claim could exist under New York law where a client was imprisoned as a result of the malpractice and the criminal proceeding terminated in the client's favor prior to trial by dismissal of the indictment.

state law. Defendants have not pointed to a single case in the history of New York jurisprudence where a contribution claim has been permitted against a criminal defense attorney under these circumstances—namely, municipal / law enforcement defendants being sued under various state law torts for an allegedly wrongful arrest and prosecution, who in turn seek contribution for such torts from the plaintiffs' criminal defense attorney for alleged malpractice in connection with the prosecution. Moreover, as discussed below, analogous New York cases, involving contribution claims in tort cases against lawyers for alleged malpractice, suggest that contribution would not exist in the instant situation because the alleged torts of the County defendants and the alleged tort of malpractice by Majid and his firm involve different injuries.

■ The Court recognizes that it is well-settled under New York law that "contribution is available whether or not the culpable parties are allegedly liable for the injury under the same or different theories." *Raquet*, 90 N.Y.2d at 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (quotations and citations omitted); *accord Comi v. Breslin & Breslin*, 257 A.D.2d 754, 756, 683 N.Y.S.2d 345 (N.Y.App.Div.1999). Thus, the fact that the tort theory against Majid is different than the theory of liability against the County defendants does not automatically preclude a contribution claim. Similarly, the mere fact that Crews is not asserting any tort against Majid (such as malpractice) does not operate to prevent a third party from basing a contribution claim on such tort, because Section 1401 allows for contribution regardless of whether an action has been brought against the other purported tortfeasor.

However, there is substantial doubt under New York law over whether, under the circumstances of this case, the purported tort of malpractice of a criminal defense attorney could be found to cause the "same injury" to his client as that of the County defendants, who are alleged to have wrongfully arrested and maliciously prosecuted the client. *See Nassau Roofing & Sheet Metal Co.*, 71 N.Y.2d at 603, 528 N.Y.S.2d 516, 523 N.E.2d 803 (Section 1401's "essential requirement" is that the parties contributed to the same injury). For example, in *Edouard v. Ginsberg & Broome, P.C.*, 229 A.D.2d 559, 645 N.Y.S.2d 865 (N.Y.App.Div.1996), clients sued a law firm for legal malpractice, alleging that such malpractice resulted in dismissal of its medical malpractice lawsuit. The law firm commenced a third party action against the medical defendants, seeking contribution. The Second Department affirmed the dismissal of the contribution claim by the law firm against the medical defendants because "the injury allegedly caused by [the law firm], *i.e.*, the loss of certain legal rights, is not the 'same' injury as the one allegedly caused by the medical malpractice, although the damages might be identical." *Edouard*, 229 A.D.2d at 560–61, 645 N.Y.S.2d 865; *see also Gonzalez v. Jacoby & Meyers*, 258 A.D.2d 560, 561, 685 N.Y.S.2d 461 (N.Y.App.Div.1999) ("Here ... the injury allegedly caused by [the law firm], i.e., the loss of certain legal rights, is not the same injury as the one allegedly caused by DDI's alleged negligence in the automobile accident.... While the third-party plaintiff [law firm] and DDI allegedly violated duties to the plaintiffs, they did not share in responsibility for the same injury.") (citations omitted); *Jakobleff v. Cerrato, Sweeney & Cohn*, 97 A.D.2d 786, 787, 468 N.Y.S.2d 894 (N.Y.App.Div.1983) ("In this case, the attorneys are not being held responsible for another's wrong but are charged themselves with negligence which allegedly resulted in the loss of their client's legal rights. Accordingly, the claims for contribution and indemnification

should be dismissed."); *accord Keeley v. Tracy,* 301 A.D.2d 502, 503, 753 N.Y.S.2d 519 (N.Y.App.Div.2003); *Fedorov v. Hussain,* 17 Misc.3d 1138(A), 2007 WL 4303521, at *3 (N.Y.Sup.Ct. Dec. 4, 2007).

In the instant case, Crews alleges that the County defendants committed various state law torts against him by arresting him without probable cause and indicting him, even though they allegedly knew for weeks before the indictment that he was innocent of the robbery. The County defendants assert that Majid committed legal malpractice by, among other things, failing to properly protect his client's rights during the pendency of the judicial proceedings relating to the arrest and indictment. Thus, the analysis in the above-referenced New York cases would suggest that no contribution claim could exist under Section 1401 given those allegations, because the injury allegedly caused by Majid's malpractice—namely, the loss of certain legal rights in connection with the judicial proceedings—is not the same injury as the one allegedly caused by the County defendants in connection with the arrest and indictment, even if some of the damages might be the same.

That conclusion under New York law would be consistent with cases outside New York which have found no such cause of action under analogous state contribution provisions or the common-law right to contribution. *See, e.g., Biberdorf v. Oregon,* 243 F.Supp.2d 1145, 1161 (D. Oregon 2002) (finding no contribution claim could exist under Oregon law, where state and county brought third-party action which sought indemnity or contribution from inmate's attorney, in connection with case where inmate was suing the state and county for, among other things, state law torts of false imprisonment and negligence); *see also Katka,* 422 F.Supp.2d at 1307 (where motorist brought suit against employees of Georgia Bureau of Investiga-

tion in connection with prosecution for driving under the influence, and employees filed third-party complaint against lab technician who allegedly improperly tested blood, court noted that "it is far from clear" that the defendants are accused of the same wrongdoing as the lab technician "and, thus, contribution would not seem applicable").

Although this Court's analysis of above-referenced applicable New York law suggests that the County Defendants have no contribution claim under Section 1401, there is no New York case squarely addressing this issue, and some analogous cases (although not exactly on point) would appear to provide support for the County defendants' position. *See, e.g., Comi v. Breslin & Breslin,* 257 A.D.2d 754, 756, 683 N.Y.S.2d 345 (N.Y.App.Div.1999) (allowing law firm, being sued for malpractice for failure to uncover fraud arising from client's purchase of stock, to bring cross-claim against sellers of stock for their alleged fraud); *Donnelly v. Morace,* 162 A.D.2d 247, 248, 556 N.Y.S.2d 605 (N.Y.App.Div.1990) (affirming refusal to dismiss Port Authority's cross-claim for contribution against employer, where both Port Authority and employer were being sued in connection with alleged wrongful arrest and imprisonment of plaintiff, after employer conducted theft investigation that led to plaintiff being charged with grand larceny and other crimes).

However, the Court need not settle this unresolved state law issue in connection with this lawsuit because, even assuming *arguendo* that a contribution right existed under state law, the Court concludes, after a careful analysis of all of the Rule 14(a) factors for an impleader motion, that the motion should be denied because of the clear potential for, among other things, delay, confusion, and potential prejudice if the third-party contribu-

tion claim were allowed on the pendent state claims. First, the answer in this case was filed in July 2006 and, although discovery was stayed until December 2007 because of subsequent motions to dismiss, discovery has been ongoing for approximately one year. Thus, the addition of Majid has the potential to substantially delay the resolution of this action, where discovery is already underway. *See Guttman on behalf of Barney C. Guttman & Assoc., Inc. etc. v. Sands*, No. 88 Civ. 5439(JSM), 1990 WL 213082, at *4–*5, 1990 U.S. Dist. LEXIS 17083, at *13 (S.D.N.Y. Dec. 18, 1990). Second, the issue of delay in discovery is further magnified here because the contribution claim, based upon alleged legal malpractice by Majid as to plaintiffs, will potentially implicate complex issues of attorney-client privilege or other discovery issues regarding malpractice claims that would otherwise not be necessary in discovery with respect to plaintiffs' claims against the County defendants. Third, the injection of the contribution claim will substantially expand the scope of the trial in this case because, as noted above, the County would have to prove malpractice by Majid to prevail on the contribution claim. Such litigation would undoubtedly involve evidence and legal issues that would not be part of the trial of plaintiffs' claims against the County defendants. Moreover, because the evidence and legal issues on the malpractice question are different, the judicial economy in having the third-party complaint as part of this lawsuit is substantially diminished. *See Schwabach v. Mem'l Sloan–Kettering Cancer Ctr.*, No. 99 Civ. 1320, 2000 WL 122203, at *3, 2000 U.S. Dist. LEXIS 797, at *10–*11 (S.D.N.Y. Jan. 31, 2000) (noting that impleading third-party defendants "would in no way further the purpose of Rule 14 as a mechanism for eliminating multiple and repetitive lawsuits and trials by allowing for a single presentation of evidence when multiple claims turn upon identical or similar proof. The interest in judicial economy which underlies Rule 14 is clearly not advanced when the claims asserted against the third party only complicate the case by adding entirely new factual and legal issues unrelated to plaintiff's underlying claim") (internal citations omitted); *see also Elektra Entertainment Group, Inc. v. Santangelo*, No. 06 Civ. 11520(SCR)(MDF), 2008 WL 461536, at *3 (S.D.N.Y. Feb. 15, 2008). Third, there is also the substantial risk that the jury would be confused by the insertion of this contribution claim, and the evidence surrounding it, into a Section 1983 trial. In particular, as discussed in detail *supra*, since there is no contribution claim available in the context of a Section 1983 claim, the jury could be confused if that exact issue was only inserted into the case in connection with the supplemental state claims. Obviously, any such confusion could prejudice plaintiffs in their ability to present the evidence and claims to the jury under Section 1983 in a clear manner. In short, given these substantial issues of delay, complexity, confusion of issues, and potential prejudice to plaintiffs in presenting their case, the Court concludes, in its discretion, that the County defendants' motion to implead under Rule 14 to assert the third-party complaint against Majid and his firm should be denied.

Other courts have reached the same conclusion under similar circumstances. For example, in *Valdez v. Farmington*, 580 F.Supp. 19 (D.N.M.1984), involving a Section 1983 claim against a municipality and members of the police department for excessive force, the Court denied the defendant's motion to file a third-party complaint against an individual for contribution. In reaching this decision, the Court explained:

> [The third-party defendant's] presence as a party is not necessary to enable

defendants to assert that it was her actions, and not those of the defendants, which proximately caused plaintiff's injuries. Defendants will not be prejudiced substantially if the Court refuses to allow this third-party action. Defendants will remain free to institute a separate action for contribution or for indemnity against [the third-party defendant] should a judgment be entered against them in the present action. Defendants may then address directly, which they have not done in either of their impleader motions in this cause, the difficult question of whether they may seek contribution or indemnity in the context of a civil rights action.

In the present case, the possibility exists of unnecessary confusion, complication of the issues, prejudice to the plaintiff, expense, and delay if the motion to implead [the third-party defendant] were granted. The claims upon which the third-party complaint is based are questionable. Considerations of judicial economy and of avoiding circuity and duplication of action do not outweigh the countervailing considerations inherent in permitting this third-party complaint to proceed.

*Valdez,* 580 F.Supp. at 21; *see also Hughes,* 2007 WL 3306076, at *2 (denying motion to implead in Section 1983 action where, among other things, defendant failed to establish he would be entitled to indemnity or apportionment from proposed third-party defendants and "addition of the proposed third-party defendants may complicate the case and prejudice the plaintiff"). In the instant case, as in *Valdez,* if plaintiffs recover on the pendent state claims against the County Defendants and the County Defendants wish to seek contribution against Majid and his law firm, they can pursue that claim in state court if they wish to do so.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to implead and bring a third-party complaint against Majid and Majid's firm, Majid & Associates, is denied.

SO ORDERED.